**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL MUIR, individually and on behalf of all others similarly situated,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 15 C 9835** |
| **NATURE'S BOUNTY, INC.,** | ) | **Judge Rebecca R. Pallmeyer** |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

This is a proposed class action against Nature's Bounty, Inc., the manufacturer of a formulation of the herbal supplement St. John's Wort. Plaintiff John Muir purchased the supplement from a Walgreens store near Lake Zurich, Illinois, where he lives, in July 2015. The bottle's label claimed that it was "standardized" to contain 0.3% hypericin, an active ingredient which—according to the complaint—has been shown in scientific studies to have anti-depressant effects. But when a laboratory tested Nature's Bounty-brand St. John's Wort, it was found not to contain the claimed amount of hypericin. In this lawsuit, Muir alleges breach of warranty, consumer fraud, and unjust enrichment on behalf of himself and three classes of purchasers: a nationwide class of every consumer who purchased the supplement within the last four years, a class of purchasers in a number of states that have purportedly similar consumer fraud statutes, and Illinois purchasers.

Muir's original complaint asserted claims against several manufacturers of St. John's Wort and a corporate parent, but the court granted Defendants' motion to dismiss, finding that Muir did not have standing to pursue claims against manufacturers from whom he did not purchase the product. *Muir v. NBTY, Inc.*, No. 15 C 9835, 2016 WL 5234596 (N.D. Ill. Sept. 22, 2016). In his amended complaint, Muir names only one Defendant: Nature's Bounty. Nature's Bounty now moves to dismiss the amended complaint, arguing that Muir has failed to state a claim and lacks standing to assert consumer fraud claims under the laws of states where he did

not suffer an injury. For the reasons below, Defendant's motion is granted in part and denied in part.

## BACKGROUND

The facts below are taken from the complaint, which is accepted as true for the purposes of ruling on a motion to dismiss. *Berger v. Nat'l Coll. Athletic Ass'n*, 843 F.3d 285, 289 (7th Cir. 2016).

Plaintiff John Muir brings this class action complaint against Nature's Bounty, Inc., the New York-based manufacturer of a brand of St. John's Wort, an herbal supplement claimed to improve mood. (Am. Compl. [39], at ¶¶ 14, 24–25.) Muir purchased a bottle of St. John's Wort manufactured by Nature's Bounty in July 2015 from a Walgreens store near his home in Lake Zurich, Illinois. (Am. Compl. ¶¶ 1, 13.) The label touted that the product was "[s]tandardized to contain 0.3% Hypericin, 0.9 mg." (Am. Compl. ¶ 22.) Standardization, as the term is used in the supplement industry, is meant to "guarantee[] the content of one or more active constituents and marker compounds" (Am. Compl. ¶ 19), though according to the National Institutes of Health, the term has no legal or regulatory definition. (Am. Compl. ¶ 17; *see also* Nat'l Insts. of Health, *Botanical Dietary Supplements Background Information*, NIH.GOV, https://ods.od.nih.gov/factsheets/BotanicalBackground-HealthProfessional/ (last accessed Sept. 25, 2017).) Muir alleges that the concentration of hypericin advertised on the Nature's Bounty bottle—0.9 mg per serving—is the lowest amount shown in studies to confer the benefits of St. John's Wort,, and that he expected to receive the amount of hypericin guaranteed on the label when he purchased the supplement. (Am. Compl. ¶¶ 26, 29.)

According to laboratory tests, however, the Nature's Bounty-brand St. John's Wort did not contain that level of hypericin. (Am. Compl. ¶ 23.) Muir's counsel submitted a bottle of Defendant's St. John's Wort for testing by Chromadex, an Irvine, California-based laboratory; the result showed that the supplement contained only 0.578 milligrams of hypericin per serving. (ChromaDex, Form 1A: Initial Investigation of Out of Specification (OOS) Results (May 21,

2015), Ex. A to Am. Compl. [39-1].) The complaint does not make clear whether the tests were conducted on the same bottle that Muir purchased, or another bottle of the same brand. (*E.g.*, Am. Compl. ¶ 23 ("Unfortunately for Plaintiff and the Classes the Product actually contains substantially less amounts of Hypericin than the amount listed on the label, making it not 'standardized.' *See* St. John's Wort Product Testing, attached hereto as Exhibit A.").) According to Muir, Nature's Bounty knew that its St. John's Wort supplement did not contain the advertised amount of hypericin: Nature's Bounty allegedly "subjected the Product to 'numerous quality tests and assays' to 'verify purity and full potency' [and] . . . sold the mislabeled Products despite its test results . . . ." (Am. Compl. ¶¶ 26, 72.) Despite having conducted its own tests which effectively revealed the low level of hypericin, Nature's Bounty continued to sell the product and to represent that it contained 0.3% hypericin. (*Id.*)

Defendant's deception about the level of hypericin deprived Muir and the class members of the benefits of the product, Muir claims, and lowered the value of the product itself. (Am. Compl. ¶ 32.) In his amended complaint, Muir asserts the claims of three classes of consumers who purchased Nature's Bounty-brand St. John's Wort, from four years prior to filing the complaint to the present: (1) a national class of all United States purchasers on breach of warranty and unjust enrichment theories; (2) a multi-state class of purchasers from states with similar consumer fraud laws (California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York and Washington), asserting claims under those laws; and (3) a class of Illinois purchasers, alleging a violation of the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq*. (Am. Compl. ¶ 40, Counts I–IV.)

As noted, Muir's original complaint named several other St. John's Wort manufacturers, in addition to Nature's Bounty, as Defendants: Rexall Sundown, Inc.; Nature's Origin, LLC; Vitamin World, Inc.; and Puritan's Pride, Inc.; as well as the manufacturers' parent company, NBTY, Inc. (*See generally* Compl. [1].) All Defendants jointly moved to dismiss, arguing, as a threshold matter, that Muir lacked standing to sue for products he never purchased. The

Defendants argued, further, that Plaintiff could not establish personal jurisdiction over them and that the complaint suffered from several substantive defects as well: (1) that the laboratory test data Plaintiff relied on was inadequate to establish that he product was deficient, (2) that "standardized" does not mean "guaranteed," and (3) that Plaintiff therefore had failed to state a claim for breach of warranty, unjust enrichment or consumer fraud. (*See* Defs.' Mem. in Supp. of Mot. to Dismiss [21].)

The court found that Muir had standing to sue only the manufacturer that made the product he had purchased, *Muir v. NBTY, Inc.*, No. 15 C 9835, 2016 WL 5234596, at *4 (N.D. Ill. Sept. 22, 2016), and deferred the issue of personal jurisdiction until he narrowed the case to the relevant defendant, *id.* at *4–5. The court dismissed Muir's breach of warranty claim because Muir could not allege that the manufacturer was on notice of his claim as required by the Uniform Commercial Code ("UCC"): he had not identified the relevant manufacturer, nor did he allege that the manufacturer had notice of the defect with the particular bottle Muir purchased. *Id.* at *9–10. The court otherwise denied the motion. *Id.* at *10.

Muir filed an amended complaint alleging the same classes and claims as in his initial complaint, but with Nature's Bounty as the sole defendant. (*See generally* Am. Compl.) Nature's Bounty has again moved to dismiss, arguing that (1) Muir's breach of warranty claim still does not adequately allege that Nature's Bounty was on notice of Muir's claim, (2) the ICFA and unjust enrichment claims "impermissibly rehash" the breach of warranty claim, (3) the nationwide class cannot rely on the substantive law of Illinois, and (4) Muir lacks standing to represent the purchasers in the proposed consumer fraud class who have claims under the laws of states other than Illinois, where Muir purchased the product. (*See* Def.'s Mem. in Supp. of Mot. to Dismiss [hereinafter "Def.'s Br."] [44].)

## DISCUSSION

Complaints in federal court must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). To avoid dismissal for

failure to state a claim, the plaintiff must allege sufficient facts which, taken as true, raise the plaintiff's right to relief "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Similarly, on a motion to dismiss for lack of standing, a plaintiff must plead allegations sufficient to "plausibly suggest" that she has standing. *Berger*, 843 F.3d at 289 (quoting *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015)).

For the reasons below, Defendant's motion to dismiss is granted in part and denied in part. Muir's breach of warranty claim fails due to the notice requirements imposed by the UCC. The existence of the warranty, however, does not defeat his ICFA and unjust enrichment claims. Nevertheless, Muir may not apply Illinois law to a nationwide class, and may not assert claims under the consumer fraud laws of other states. The court's reasoning follows.

## I. Breach of warranty

Defendant argues that Muir's breach of warranty claim must be dismissed because he failed to give timely notice of the claim before bringing suit. In order to prevail on a complaint for breach of warranty under Illinois law, the purchaser "must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 492, 675 N.E.2d 584, 589 (1996) (quoting 810 ILCS 5/2-607(3)(a)). This requirement comes from the UCC, which Illinois has adopted. *See* 810 ILCS 5/1-103. There are two exceptions to the notice rule, where (1) "the seller has actual knowledge of the defect of the particular product," and (2) when the plaintiff suffers a physical injury from the product. *Id.* at 492, 495, 675 N.E.2d at 589–90. Muir acknowledges that he did not provide notice, and did not suffer a personal injury. The parties dispute, however, whether the "actual knowledge" exception applies.

Muir argues that actual knowledge is satisfied by his allegation that Nature's Bounty performed "purity and potency" testing on its St. John's Wort product, and therefore knew that each and every product in the line was defective, including the bottle that he purchased. (*See* Am. Compl. ¶ 72.) But the actual knowledge exception, as interpreted by *Connick* and the

cases that follow it, is extremely narrow: it applies only where the manufacturer of a product is "somehow apprised of the trouble with the particular product purchased by a particular buyer." *Connick*, 174 Ill. 2d at 494, 675 N.E.2d at 590. The purpose of the exception is not to ensure that the seller is on notice of the facts substantiating the breach, "which the seller presumably knows quite as well as, if not better than, the buyer, but of [the] *buyer's claim* that they constitute a breach." *Anthony v. Country Life Mfg., LLC*, 70 Fed. App'x 379, 384 (7th Cir. 2003) (quoting *Connick*, 174 Ill. 2d at 494, 675 N.E.2d at 590) (emphasis in original). For example, in the cases cited in *Connick*, the manufacturer was unavoidably aware of the issue with the particular product that the plaintiff purchased. *See Malawy v. Richards Mfg. Co.*, 150 Ill. App. 3d 549, 561, 501 N.E.2d 376, 384 (5th Dist. 1986) (seller hospital removed defective medical device from plaintiff); *Crest Container Corp. v. R.H. Bishop Co.*, 111 Ill. App. 3d 1068, 1077, 445 N.E.2d 19, 26 (5th Dist. 1982) (seller of industrial equipment visited plaintiff's facility and observed defective equipment); *Overland Bond & Inv. Corp. v. Howard*, 9 Ill. App. 3d 348, 359, 292 N.E.2d 168, 176 (1st Dist. 1972) (automobile dealer on notice of brakes defect where plaintiff's vehicle was towed to dealer after brakes failed).

*Connick* itself was a class action on behalf of purchasers of Suzuki Samurai sport utility vehicles; the plaintiffs alleged that the Samurai was prone to rollovers. 174 Ill. 2d at 487–88, 675 N.E.2d at 587. The plaintiffs alleged that Suzuki had actual knowledge of the defect because of (1) a report from Consumers Union, a third-party consumer watchdog organization, highlighting the risk of rollover, *id.* at 488, 675 N.E.2d at 588, (2) investigations by several state attorneys general into the defect, resulting in a settlement between Suzuki and the states, (3) commencement of another action by consumers in Pennsylvania, and (4) the filing of the *Connick* action itself, *id.* at 493, 675 N.E.2d at 589–90. The Supreme Court of Illinois, affirming dismissal for failure to state a claim, found that this amounted only to "generalized information concerning the Samurai product line," and did not prove that Suzuki had "actual knowledge of

the alleged breach of the particular products purchased by the named plaintiffs in this lawsuit." *Id.* at 494, 675 N.E.2d at 590.

The narrowness of this exception is further demonstrated by *Anthony*, a case with similar facts to Muir's. There, the Seventh Circuit affirmed dismissal of the plaintiff's claim for breach of a warranty on nutritional bars which contained stevia and cholecalciferol, two substances which had not been approved by the Food and Drug Administration as food additives. 70 Fed. App'x at 380–81. Though the court agreed that the defendant manufacturer must have known that it included the two substances in the bars, "Country Life's knowledge of its own ingredients is insufficient under Illinois law to constitute actual knowledge of the alleged defect." *Id.* at 384. It was knowledge of the plaintiff's claims that satisfied the actual knowledge exception, which plaintiff had not alleged. *Id.*

Muir urges this court to follow other cases that, he contends, hold that a manufacturer's knowledge of a consistent defect in a product line satisfies the "actual knowledge" requirement: *In re Rust-Oleum Marketing, Sales Practices & Products Liability Litigation*, 155 F. Supp. 3d 772 (N.D. Ill. 2016) and *Keith v. Ferring Pharm.*, *Inc.*, No. 15 C 10381, 2016 WL 5391224 (N.D. Ill. Sept. 27, 2016). In *Rust-Oleum*, however, the court noted that each of the fifteen plaintiffs had, in fact, given direct notice to the manufacturer that the product, Rust-Oleum paint, was defective. 155 F. Supp. 3d at 800. *Keith* is distinguishable as well: there, the manufacturer had actual knowledge because the manufacturer had not only performed testing and found that some lots of its fertility drug, Bravelle, were sub-potent, but had gone so far as to recall the product. 2016 WL 5391224 at *7. This was sufficient, the court found, to satisfy the actual knowledge requirement. *Id.* Muir has not alleged direct notice, as in *Rust-Oleum*, nor has Nature's Bounty recalled the product. The court finds that the level of knowledge alleged by Muir—that Nature's Bounty tested the product and likely found it sub-potent—is not sufficient to satisfy the UCC notice requirement as set out in *Connick*. *Accord Block v. Lifeway Foods, Inc.*, No. 17 C 1717, 2017 WL 3895565, at *6 (N.D. Ill. Sept. 16. 2017) (finding plaintiff had not

alleged actual knowledge by alleging that study funded by defendant revealed that kefir product promoted as "99% lactose-free" in fact contained 4% lactose); *Ulrich v. Probalance, Inc.*, No. 16 C 10488, 2017 WL 3581183, at *8 (N.D. Ill. Aug. 18, 2017) (granting motion to dismiss though defendant was allegedly aware that protein supplements did not contain advertised level of protein). Muir's breach of warranty claim is accordingly dismissed.

## II. Illinois Consumer Fraud Act claims

Muir also claims that Nature's Bounty violated the Illinois Consumer Fraud Act ("ICFA"), 815 ILCS 505/1 *et seq.*, by failing to disclose a known defect in its product. ICFA declares that

> [u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2. Muir argues that Defendant's representations of the amount of hypericin in its product constitute a false promise or misrepresentation that Defendant intended he rely on—and that he did rely on—when making his purchase. Though Muir's claims would appear to fall squarely within the statute, Defendant argues that Muir's claim is tripped up by a significant carve-out from ICFA: "A breach of contractual promise, without more, is not actionable under the [Illinois] Consumer Fraud Act." *Avery v. State Farm Mut. Auto Ins. Co.*, 216 Ill. 2d 100, 169, 835 N.E.2d 801, 844 (2005). This exception, which the court will call the "simple breach" exception, dooms many purchaser-seller ICFA claims. For example, in *Shaw v. Hyatt International Corp.*, 461 F.3d 899 (7th Cir. 2006), the plaintiff alleged that a foreign hotel tricked him into paying more than the advertised room rate by using a less advantageous currency exchange rate. *Id.* at 900. The Seventh Circuit affirmed dismissal of the plaintiff's ICFA claim. *Id.* at 902. In effect, the Seventh Circuit observed, the claim was a breach of contract action: the hotel had promised to charge the plaintiff $502.00 for the room, and instead charged him more. *Id.* at 900.

The "simple breach" exception applies in some circumstances even where the plaintiff characterizes the defendant's wrongdoing as a false promise or material omission of fact. In *Greenberger v. GEICO General Ins. Co.*, the plaintiff claimed that GEICO omitted necessary repairs from its estimates after his vehicle was damaged, violating GEICO's promise in the insurance policy to restore the plaintiff's vehicle to its pre-loss condition after an accident. 631 F.3d 392, 394–95 (7th Cir. 2011). Greenberger characterized GEICO's actions as a "false promise" and a material "omission," but the Seventh Circuit, affirming dismissal of the ICFA claim, observed that these were "nothing more than restatements of the claimed breach of contract . . . ." *Id.* at 399. Instead, the court found, a plaintiff in a consumer fraud case where the parties have a contract must "allege . . . unfair or deceptive conduct *distinct from the alleged breach of a contractual promise*." *Id.* (emphasis added). Because GEICO had promised to restore his vehicle to pre-loss condition, its failure to do so fell within the "simple breach" exception to claims under ICFA. *See id.*

Other Illinois courts, however, have recognized ICFA claims where a seller knowingly fails to disclose a defect in a product. This is so despite the fact that the plaintiff's claims are governed by a warranty; what matters is the defendant's knowing failure to disclose that the product is defective. For example, in *Pappas v. Pella Corp.*, the Illinois appellate court reversed dismissal of ICFA claims where the plaintiffs alleged that a window manufacturer knowingly failed to disclose a defect that allowed water to enter the window sill, causing wood rot and deterioration. 363 Ill. App. 3d 795, 797, 844 N.E.2d 995, 997 (1st Dist. 2006). The court concluded that the plaintiffs alleged more than a simple breach of warranty, because, if the allegations were true, the manufacturer not only breached the warranty but also knowingly withheld the information about the defects at the time of sale. *Id.* at 800, 844 N.E.2d at 999–

1000.[1] *Connick*, discussed above, reached a similar result: the court found that the plaintiffs had adequately stated a claim under ICFA because they alleged that Suzuki was aware that the Samurai tended to roll over and failed to disclose the defect to the plaintiffs. 174 Ill. 2d at 505, 675 N.E.2d at 595. As in *Pappas*, there was a contractual warranty in *Connick*; the court found it unenforceable due to the plaintiffs' failure to provide Suzuki with notice of their warranty claims, but that was no obstacle to plaintiffs' ICFA claims. *See id.* at 494–95, 675 N.E.2d at 590–91.

Defendant argues that the "simple breach" exception defeats a plaintiff's claim even where the defendant knowingly fails to disclose a defect, as long as the defect is the subject of an express warranty. The court disagrees. True, *Greenberger* suggested that a consumer must "allege . . . unfair or deceptive conduct *distinct* from the alleged breach of a contractual promise," 631 F.3d at 399 (emphasis added), but *Connick* and *Pappas* held that the plaintiff had an ICFA claim even where the defect was the subject of an express warranty. Given that *Pappas* and *Connick* considered breaches of a warranty, specifically, they are more closely analogous and are controlling. Furthermore, *Greenberger* itself suggested that "affirmative acts of misrepresentation" may be distinct from the routine breaches of contract not covered by ICFA, and may support an ICFA claim. *Id.* at 400. The conduct that Muir alleges was an affirmative act of misrepresentation: Nature's Bounty allegedly knew when it shipped the St. John's Wort supplement that the product did not contain the claimed levels of hypericin.

Finally, Defendant's position, if adopted, would have an undesirable result: If express warranties precluded ICFA claims even where the defendant knew that its product contained defects, a manufacturer could avoid ICFA liability by expressly guaranteeing that a product did

[1] Defendant contends *Pappas* is distinguishable, as the plaintiff in *Pappas* did not assert breach of warranty in his complaint, but that court found the existence of the warranty irrelevant to plaintiff's ICFA claim, whether or not it was pleaded. 363 Ill. App. 3d at 800, 844 N.E.2d at 1000 ("It is not necessary for plaintiffs to plead that the warranty provisions of their contract would not provide them adequate relief. . . . A consumer fraud action is different from a warranty action.")

not have a defect of which the defendant was aware. ICFA should not be interpreted to excuse companies who expressly lie about their products while penalizing those who merely say nothing. The court denies Defendant's motion as to Muir's ICFA claim.

### III. Unjust enrichment

Nature's Bounty also argues that Muir cannot state a claim for unjust enrichment because his relationship with Nature's Bounty is governed by a contract. To recover on a theory of unjust enrichment, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 160, 545 N.E.2d 672, 679 (1989). There are two types of unjust enrichment claims under Illinois law: one based on "unlawful or improper conduct as defined by law, such as fraud, duress, or undue influence," and one based on contracts implied in law. *Saletech, LLC v. East Balt, Inc.*, 2014 IL App (1st) 132639, ¶ 36, 20 N.E.3d 796, 808. Where the plaintiff alleges the latter type of unjust enrichment, the existence of an express contract between the parties on the same subject matter as the alleged implied-in-law contract defeats the claim because the express contract crowds out the possibility of an implied contract. *Utility Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 689 (7th Cir. 2004).

The court is satisfied that plaintiff's unjust enrichment claim here is not premised on an implied-in-law contract, but upon the separate allegation that Nature's Bounty defrauded consumers. As the Seventh Circuit observed in *Cleary v. Phillip Morris*, the inequity at which unjust enrichment doctrine takes aim will often "form the basis of another claim against the defendant in tort, contract, or statute." 656 F.3d 511, 517 (7th Cir. 2011). Where the unjust enrichment claim is predicated on the same conduct as another claim, "then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *Id.* Muir acknowledged that his unjust enrichment claim would

stand or fall with the court's acceptance of his ICFA claim. The court has not dismissed his ICFA claim, and the unjust enrichment claim survives as well.

## IV. Proposed classes

Muir seeks to represent a nationwide class to whom Illinois law would apply, and a "Consumer Fraud Multi-State Class" for purchasers in California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York and Washington. (Am. Compl. ¶ 40.) Nature's Bounty does not challenge Muir's standing to represent Illinois purchasers, but argues that Muir cannot represent purchasers in other states, and contends that this determination should not wait until the class certification stage. Rule 23 requires the court to decide whether an action should proceed as a class at an "early practicable time[.]" FED. R. CIV. P. 23(c)(1)(A). The court may address certification issues before the plaintiff files a motion for certification where discovery is not relevant to the determination. *See Kasalo v. Harris & Harris*, 656 F.3d 557, 563 (7th Cir. 2011).

### A. Nationwide class

Muir's nationwide class allegations should be dismissed, Nature's Bounty contends, because Illinois law cannot apply to residents of other states. The Seventh Circuit has observed, however, that a plaintiff purporting to represent a nationwide class under Illinois law does not fail at the motion-to-dismiss stage unless the face of the complaint "defeats [the] application of Illinois law." *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 538 (7th Cir. 2011). That said, the court agrees that on the facts alleged in the complaint the applicable choice-of-law rules would point to the state of the purchaser, making the application of Illinois law inappropriate.

Federal courts apply the choice-of-law rules of the state in which they sit; here, that state is Illinois. *Dobbs v. DePuy Orthopedics, Inc.*, 842 F.3d 1045, 1048 (7th Cir. 2016). Illinois has adopted the choice-of-law approach advocated by the Restatement (Second) of Conflict of Laws, known as the "most significant relationship" test. *Barbara's Sales, Inc. v. Intel Corp.*, 227

Ill. 2d 45, 61, 879 N.E.2d 910, 919 (2007), *see also* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145 (AM. LAW. INST. 1971). For consumer fraud actions, "when a plaintiff purchases goods in the plaintiff's home state based on representations received in plaintiff's home state, the law of that home state . . . will usually govern[.]" *Barbara's Sales*, 227 Ill. 2d at 69, 879 N.E.2d at 924. In *Barbara's Sales*, the Illinois Supreme Court addressed the certified question of what law should apply to a nationwide class of computer purchasers who alleged that California-based Intel had misled them in a national advertising campaign about the speed of its processors. *Id.* at 47–48, 879 N.E.2d at 912. The named plaintiffs were primarily Illinois residents who had seen the advertising and purchased the product in Illinois, *id.* at 58–59, 879 N.E.2d at 918, and the Illinois trial court declined to certify a nationwide class under California law. Instead, the court certified a class of Illinois purchasers bringing claims under Illinois law, *id.* at 56, 879 N.E.2d at 917. The Supreme Court upheld that decision, noting that Illinois choice-of-law rules point to the state where the plaintiffs purchased their computers and received the misrepresentations: in that case, Illinois. *Id.* at 69–70, 879 N.E.2d at 924–25.

The facts of this case, if anything, more clearly point to the state where the consumer purchased St. John's Wort: the representation that the product contained 0.3% hypericin is on the bottle itself, collapsing the place-of-purchase and place-of-misrepresentation questions. Accepting Plaintiff's allegations as true, the nationwide class includes members "throughout the United States," numbering in the "tens of thousands." (Am. Compl. ¶ 9.) There are, presumably, many consumers who bought the supplement outside Illinois and saw the misrepresentation in their home states. For consumers who live and purchased the product outside of Illinois, the transaction had nothing to do with the state. Muir may not, therefore, maintain a nationwide class under the law of Illinois.

Muir contends that discovery is necessary to determine if a conflict of law actually exists relevant to this case. "A choice-of-law determination 'is required only when a difference in law will make a difference in the outcome.'" *Bridgeview Health Care Ctr., Ltd. v. State Farm Fire &*

*Cas. Co.*, 2014 IL 116389, ¶ 14, 10 N.E.3d 902, 905 (quoting *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 155, 879 N.E.2d 893, 898 (2007)). The party seeking the choice-of-law determination, here, Nature's Bounty, must demonstrate that a conflict exists. *Id.*

Because Muir asserted only breach of warranty and unjust enrichment claims on behalf of the nationwide class, and the breach of warranty claims have been dismissed, the court need consider only whether Nature's Bounty has identified relevant conflicts in the laws of the fifty states on unjust enrichment. One court of this district observed that "unjust enrichment is a tricky type of claim that can have varying interpretations even by courts within the same state, let alone amongst the fifty states." *In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, Nos. 05 C 4742 & 05 C 2623, 2006 WL 3754823, at *1 n.3 (N.D. Ill. Dec. 18, 2006) (on a motion to dismiss, rejecting bid by plaintiff to apply Illinois law to nationwide class). As an example of a conflict relevant to this case, Nature's Bounty points out that several states require that the defendant enjoy a "direct benefit" from plaintiffs' purchase in order to substantiate an unjust enrichment claim, and a defendant does not necessarily receive a "direct benefit," under the law of Ohio and New Jersey, when the plaintiff purchases a defendant manufacturer's product from an intermediary, such as a retailer. (Def.'s Br. 11 (citing *Bower v. Int'l Bus. Machs.*, 495 F. Supp. 2d 837, 844 (S.D. Ohio 2007) (under Ohio law, where plaintiff purchasers did not "[pay] money directly to IBM," no direct benefit); *In re Ford Motor Co. E-350 Van Prod. Liab. Litig. (No. II)*, Civil Action No. 03–4558 (GEB), 2011 WL 601279, at *9–10 (D.N.J. Feb. 16, 2011) (under New Jersey law, no direct benefit to car manufacturer when plaintiff purchased car at dealership).)[2] Thus, in *Johnson v. Microsoft Corp.*, the Ohio Court of Appeals upheld

[2] Nature's Bounty also relies on *Kopel v. Kopel*, 117 So. 3d 1147 (Fla. Dist. Ct. App. 2013), but the decision was "quashed" on other grounds after the briefing was completed in this case. *Kopel v. Kopel*, ___ So. 3d ____, 2017 WL 372074 (Fla. Jan. 26, 2017). Whatever the significance of the "quashing" might be, the facts of *Kopel* are not analogous: that case concerned a complex family dispute and misappropriated loan proceeds. *Kopel*, 117 So. 3d at 1149–50. Beyond affirming that the "direct benefit" rule exists in Florida, *id.* at 1152, the case tells the court little about whether a purchaser confers a direct benefit on a manufacturer by purchasing the defendant's product from a retailer.

dismissal of an unjust enrichment claim by a computer purchaser who alleged she had paid more for the computer because Microsoft used its monopoly on personal computer operating systems to artificially increase the price. 155 Ohio App. 3d 626, 629, 802 N.E.2d 712, 713–14 (Ohio Ct. App. 2003). The appellate court found that, though Johnson had paid money to a retailer in exchange for a computer with the operating system, she had conferred no "direct benefit" on Microsoft. *Id.* at 635, 802 N.E.2d at 719.

If this is indeed the state of the law in Ohio and New Jersey, it will have an impact on the class's claims: Muir alleged that he purchased his bottle of St. John's Wort from Walgreens, not from Nature's Bounty directly. Muir, for his part, has not addressed the issue of this difference in the law; to the contrary, he incorrectly asserted that Nature's Bounty had not even attempted to identify differences in state law. (Pl.'s Br. 13–14.)) Given that unjust enrichment doctrine is particularly complex and that Nature's Bounty did identify at least one significant difference in the unjust enrichment law of the fifty states, the court declines to permit Muir to proceed to discovery on a nationwide class basis on this theory. Accordingly, Muir's nationwide class allegations are dismissed without prejudice.

**B. Multi-state consumer class**

For the multi-state class, Muir seeks to bring claims for consumers in a select group of states with consumer fraud laws that he believes are "similar" to ICFA on the facts of this case. (Am. Compl. ¶ 40 n.5.) Instead of applying Illinois law to these consumers, each state's law would apply to the resident consumers. To this proposed class, Nature's Bounty interposes a different objection: that Muir does not have standing to bring claims under the laws of states in which he does not reside and did not purchase the product. Muir again argues that the question should wait until class certification. The court disagrees.

The court must ensure that it has a justiciable case or controversy before it, and standing is usually a threshold question antecedent to any merits determination in the case. *Meyers v. Nicolet Restaurant of De Pere, LLC*, 843 F.3d 724, 726 (7th Cir. 2016). Typically, a

plaintiff must demonstrate "standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). In the class context, courts of this district have expressed disagreement as to whether a named plaintiff must demonstrate her own standing under each state's laws identified in the complaint, or whether other class members' standing to bring those claims is sufficient. *See Bietsch v. Sergeant's Pet Care Prods.*, No. 15 C 5432, 2016 WL 1011512, at *9 (N.D. Ill. Mar. 5, 2016) (collecting cases). If the latter is sufficient, the question of standing can be delayed until after class certification, which is what Muir advocates here.

In a pair of cases, *Amchem Products v. Windsor*, 521 U.S. 591 (1997) and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999), the Supreme Court introduced some support for Muir's position by addressing the question of class certification before the question of standing. Both cases concerned certification of an asbestos settlement class, and the Court addressed the question of certification before standing, commenting that certification was "logically antecedent to the existence of any Article III issues . . . ." *Amchem Prods.*, 527 U.S. at 612; *see also Ortiz*, 527 U.S. at 831. Muir takes this comment as support for the position that a court may rely on the standing of class members, but the court is not so sure. As this court observed in a previous case, *Baldwin v. Star Scientific, Inc.*, 78 F. Supp. 3d 724, 735 (N.D. Ill. 2015), the standing challenges in *Amchem* and *Ortiz* were directed towards members of a putative settlement class, *see Ortiz*, 527 U.S. at 612–613. Where standing challenges are directed towards uncertified class members, class certification is antecedent to the standing problem—before the class members are certified, they are not plaintiffs that might lack standing. *Id.* On that reading, the Court's holdings in *Amchem* and *Ortiz* do not disturb the ordinary primacy of the standing question, nor the general rule that a plaintiff must establish her own standing. *DaimlerChrysler Corp.*, 547 U.S. at 352.

The Seventh Circuit has lent some support to the opposite conclusion; that is, that *Amchem* and *Ortiz* mean that standing questions may be delayed until class certification. In

*Payton v. County of Kane*, six named plaintiffs brought suit under 42 U.S.C. § 1983 to dispute nineteen Illinois counties' practice of charging a "bail fee," a charge imposed by the counties above the judge-set bail amount that was also a condition of release (a practice permitted by an Illinois statute, 55 ILCS 5/4-5001). 308 F.3d 673, 675 (7th Cir. 2002). The named plaintiffs had been charged the fees in just two Illinois counties, Kane and DuPage, and the district court dismissed the case for lack of standing. *Id.* at 676.[3] The Seventh Circuit reinstated the case, finding that the named plaintiffs had standing to represent the class even though it included people charged fines by the other seventeen counties. *Id.* at 680–82. In doing so, the court observed that "[t]he certification of a class changes the standing aspects of a suit, because '[a] properly certified class has a legal status separate from and independent of the interest asserted by the named plaintiff.'" *Id.* at 680 (quoting *Whitlock v. Johnson*, 153 F.3d 380, 384 (7th Cir. 1998)).

Though *Payton* suggests that a named plaintiff may represent class members on claims to which the plaintiff does not personally have standing, the factual underpinning of *Payton* was unique. In that case, the named plaintiffs had the very same claims as the unnamed members of the class, 42 U.S.C. § 1983, *see id.* at 676, and had been injured by the very same state statute, *id.* at 682. Though Muir claims he was injured by the same action that injured the unnamed class members—Defendant's false representation and sale of the supplement—his claim under ICFA is different from the unnamed class members' claims under their respective state consumer fraud laws.[4] Thus, neither *Amchem*, *Ortiz* nor *Payton* directly addressed the

[3] The district court dismissed the case by the named plaintiffs against the counties in which they had been jailed, as well, *Payton*, 308 F.3d at 676; the Seventh Circuit expressed some confusion regarding that decision and reversed, noting that "named representatives from each of those jails were before the court . . . ." *Id.* at 677.

[4] There is a distinction between constitutional standing and a person's right to bring a claim under a particular statute, *see Morrison*, 649 F.3d at 536. Constitutional standing requires only an injury, caused by the defendants, which is redressable by the courts. *Id.* The right to bring a claim under a particular statute is sometimes referred to as "statutory standing." *See id.*; *see also Kohen v. Pacific Inv. Mgmt. Co.*, 571 F.3d 672, 677 (7th Cir. 2009) (noting that plaintiff may have standing in the "Article III sense," but may nevertheless be suing "under a

question of whether a named plaintiff must have standing to assert each claim contained in the complaint before certification. The court concludes those cases do not require the conclusion that Plaintiff has standing to assert claims he does not have, on behalf of members of a class that has not yet been certified. *See DaimlerChrysler Corp.*, 547 U.S. at 352 ("our standing cases confirm that a plaintiff must demonstrate standing for each claim he seeks to press"). Though the court again acknowledges that there are sound arguments on either side, the court remains convinced that the question of standing must be addressed before certification where the standing of the named plaintiff to assert the claims of the class is in question. *Accord Liston v. King.com, Ltd.*, No. 15 CV 01853, ___ F. Supp. 3d ____, 2017 WL 2243099, at *6–7 (N.D.Ill. May 23, 2017) (in proposed multi-state consumer fraud class against game creator, dismissing case where named plaintiffs did not have standing to pursue the claims of the class). The multi-state class claims are dismissed without prejudice.

**CONCLUSION**

Defendant's motion to dismiss [43] for lack of standing and for failure to state a claim is granted in part and denied in part. Plaintiff's breach of warranty claims, nationwide class allegations, and multi-state class allegations are dismissed. Defendant's motion is otherwise denied.

ENTER:

Dated: September 28, 2017

REBECCA R. PALLMEYER
United States District Judge

---

statute that was not intended to give him a right to sue," depriving him of statutory standing). The *Payton* court did not address the distinction specifically, but this court notes that the plaintiffs in that case had both statutory standing under 42 U.S.C. § 1983 for their own claims and constitutional standing. *See* 308 F.3d at 682. Muir may have constitutional standing, but appears to lack statutory standing.