**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL MUIR, MELISSA BOWERS,** | ) | |
| **REGINA CORBIN, COLLEEN GAINES,** | ) | |
| **and DONNA BENGEN, individually and on** | ) | |
| **behalf of all others similarly situated,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 15 C 9835** |
| | ) | |
| **NATURE'S BOUNTY (DE), INC.,** | ) | **Judge Rebecca R. Pallmeyer** |
| **REXALL SUNDOWN, LLC, and** | ) | |
| **PURITAN'S PRIDE, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER**

This is Plaintiff Michael Muir's third attempt to plead individual and class allegations of consumer fraud and unjust enrichment arising from his and proposed class members' purchases of the dietary supplement St. John's Wort. The court dismissed Muir's original complaint insofar as it asserted claims against manufacturers whose products Muir did not purchase. *See Muir v. NBTY, Inc.*, No. 15 C 9835, 2016 WL 5234596 (N.D. Ill. Sept. 22, 2016). Muir amended his complaint to name only one manufacturer—Nature's Bounty, Inc.—as a defendant, but the court dismissed both his nationwide class allegations (due to relevant conflicts in state unjust-enrichment laws) and his multi-state class allegations (due to Muir's lack of standing to assert claims under the consumer fraud statutes of states where he did not purchase St. John's Wort). *See Muir v. Nature's Bounty, Inc.*, No. 15 C 9835, 2017 WL 4310650 (N.D. Ill. Sept. 28, 2017).

In a Second Amended Class Complaint [60], four new plaintiffs now join Muir in seeking damages—individually and on behalf of a multi-state class of certain persons who purchased St. John's Wort in Illinois, California, Michigan, or Pennsylvania—from Nature's Bounty and two additional corporate Defendants. In the alternative, Plaintiffs propose four subclasses of persons who purchased St. John's Wort in one of each of these states.

Defendants have moved to dismiss all the claims in the Second Amended Class Complaint except those that Muir himself asserts under Illinois law. For the reasons explained below, Defendants' motion [62] is granted in part and denied in part. The individual claims of the non-Illinois Plaintiffs are dismissed for lack of personal jurisdiction. Defendants' motion is otherwise denied.

## BACKGROUND

Defendant Nature's Bounty (DE), Inc. is a Delaware corporation with its principal place of business located at 110 Orville Drive in Bohemia, New York. (Second Am. Compl. [hereafter "SAC"] ¶ 19.) Nature's Bounty manufactures and sells a product that Plaintiffs refer to as "Nature's Bounty St. John's Wort Standardized Extract." (*Id.* at ¶ 14.) Defendant Rexall Sundown, LLC, a Delaware limited liability corporation whose principal place of business is also located at 110 Orville Drive in Bohemia, New York, manufactures and sells "Sundown Naturals St. John's Wort Standardized Extract."[1] (*Id.* at ¶¶ 17, 20.) Defendant Puritan's Pride, Inc., a Delaware corporation with its principal place of business in Holbrook, New York, manufactures and sells "Puritan's Pride St. John's Wort Standardized Extract." (*Id.* at ¶¶ 15, 21.) According to Plaintiffs' Second Amended Complaint, "Defendants formulated, manufactured, warranted, advertised and sold the Products in Chicago, Illinois, throughout the State of Illinois, and throughout the United States." (*Id.* at ¶ 4.) The pleadings do not make clear the precise relationship between the three Defendants. Nature's Bounty's website lists "Puritan's Pride" and "Sundown Naturals" as parts of a "broad portfolio of well-known brands" under which Nature's Bounty "markets its products." (Aff. of Richard S. Wilson, Ex. A to Pls.' Resp. Br. [66-1]; http://www.naturesbountyco.com/

---

[1]    Plaintiffs have not alleged anything with regard to the identity of Rexall's members or the state(s) in which they are domiciled. Defendants do not mention this issue, but it alone would be sufficient to dismiss Plaintiffs' claims against Rexall for lack of subject-matter jurisdiction, *see Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007) ("For diversity jurisdiction purposes, the citizenship of an LLC is the citizenship of each of its members.").

ourcompany/corporate-overview, (accessed Aug. 1, 2018).)  In their Reply brief, Defendants appear to concede that the companies "share a corporate parent."  (Defs.' Reply [68], at 6.)

Plaintiff Michael Muir is a resident of Lake Zurich, Illinois.  (*Id.* at ¶ 14.)  In or around July 2015, Muir purchased Nature's Bounty St. John's Wort Standardized Extract from the retailer Walgreens.[2]  (*Id.*)  Plaintiff Melissa Bowers, also a resident of Illinois, "has purchased" Puritan's Pride St. John's Wort Standardized Extract "for many years."  (*Id.* at ¶ 15.)  Plaintiff Regina Corbin resides in California and purchased Puritan's Pride St. John's Word Standardized Extract at some point between November 2015 and November 2017.  (*Id.* at ¶ 16.)  Plaintiff Colleen Gaines resides in Michigan and purchased both Nature's Bounty St. John's Wort Standardized Extract and Sundown Naturals St. John's Wort Standardized Extract at some point between November 2015 and November 2017.  (*Id.* at ¶ 17.)  Plaintiff Donna Bengen resides in Pennsylvania and "has been purchasing" both Nature's Bounty St. John's Wort Standardized Extract and Sundown Naturals St. John's Wort Standardized Extract "for at least 17 years."  (*Id.* at ¶ 18.)

The front labels on each of the products at issue prominently display the words "Standardized Extract."  (*Id.* at ¶ 28.)  On the back of each product's label, the following text appears under the heading "Supplement Facts": "Standardized to contain 0.3% Hypericin, 0.9 mg."  (*Id.* at ¶ 29.)  In fact, Plaintiffs allege, each of the relevant products "contain[s] different amounts of Hypericin, and all are far below the amount listed on the label."  (*Id.* at ¶ 29.)  Plaintiffs have attached exhibits to the Second Amended Complaint that show that a company called ChromaDex examined samples of "Nature's Bounty St. John's Wort," "Sundown Naturals St. John's Wort," and "Puritan's Pride St. John's Wort," and found that the amount of "Total Hypericin" in the samples ranged from 0.166 mg to 0.615 mg per "serving."  (Exs. A-C to SAC.)  According

---

[2]     Muir alleged in his First Amended Complaint that his purchase occurred in Illinois (*see* First Am. Compl. [39], at ¶ 53), but this allegation has disappeared from his Second Amended Complaint—along with any allegations about where the purchases of Muir's co-Plaintiffs occurred. Plaintiffs' failure to allege the locations of their purchases is disappointing.  The court presumes for purposes of this decision that the purchases occurred in the state where each Plaintiff resides.

to Plaintiffs, "scientific literature" demonstrates that St. John's Wort only provides "benefits" when a person ingests at least 0.9 mg of Hypericin each day. (SAC ¶ 33.) Plaintiffs therefore would not have purchased Defendants' products "if they had known that they had a significantly lower quantity of the Standardized Extract Hypericin than was stated on the Products' labels." (*Id.* at ¶ 37.)

Defendants have moved to dismiss all the claims in Plaintiffs' Second Amended Complaint "other than those asserted by Michael Muir under Illinois law against Nature's Bounty." (Defs.' Mot. to Dismiss 14.)

## **DISCUSSION**

### I.      **Personal jurisdiction**

Defendants first argue that the court lacks personal jurisdiction over any of them with regard to the claims asserted by the non-Illinois Plaintiffs. The doctrine of personal jurisdiction governs the scope of states' authority to bind non-resident defendants to the judgments of their courts. *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014). Unless a federal statute provides otherwise, a federal court's jurisdiction over a defendant's person is determined by the law of the state in which it sits. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). Illinois law permits a court to "exercise jurisdiction to the full extent permitted by the Due Process Clause of the Fourteenth Amendment." *Brook v. McCormley*, 873 F.3d 549, 552 (7th Cir. 2017) (citing 735 ILCS 5/2-209(c)). Plaintiffs bear the burden of establishing personal jurisdiction, though they "need only make out a *prima facie* case" where the court has not held an evidentiary hearing on the subject. *Northern Grain Marketing, LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). In considering whether Plaintiffs have met this burden, the court accepts well-pleaded facts as true and resolves factual disputes in Plaintiffs' favor. *Id.*

"The nature of the defendant's contacts with the forum state determines the propriety of personal jurisdiction and also its scope." *Tamburo*, 601 F.3d at 701. Where a defendant is not physically present in the forum state, but the defendant's contacts with that state are "so

'continuous and systematic' as to render [the defendant] essentially at home" there, courts in the forum state have "general jurisdiction . . . to hear any and all claims" against that defendant. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Even if the defendant is not "essentially at home" in the forum state, a court may assert "specific jurisdiction" if the defendant's "suit-related conduct . . . create[s] a substantial connection with the forum State." *Walden*, 134 S. Ct. at 1121. Specific jurisdiction is available "whenever the cause of action arises out of or relates to the contacts between the defendant and the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 427 (1984).

In this case, Plaintiffs do not argue that the court has general jurisdiction over any Defendant. Defendants, in turn, do not dispute the existence of specific jurisdiction for claims brought by persons who purchased the relevant products in Illinois. Defendants *do* dispute the existence of specific jurisdiction vwith regard to the claims of persons who purchased those products outside of Illinois. The U.S. Supreme Court's recent decision in *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017), Defendants suggest, forecloses any possible argument that specific jurisdiction exists by virtue of the non-Illinois claims "aris[ing] out of or relat[ing] to" the Defendants' contacts with Illinois.

In *Bristol-Myers Squibb*, a group of 86 California residents and 592 individuals from 33 other states filed eight complaints in California Superior Court, alleging that Plavix—a drug that the defendant sold in California but developed, manufactured, and created a marketing strategy for elsewhere—damaged their health. *Id.* at 1778. The defendant moved to quash service of summons with regard to the non-California plaintiffs' claims, arguing that California courts lacked personal jurisdiction, but the California Supreme Court disagreed. Applying what it described as a "sliding scale approach to specific jurisdiction," the state supreme court concluded that the

5

defendant's sales of Plavix in California were so "extensive"[3] that they provided a basis for specific jurisdiction, even though—as three dissenting justices pointed out—the claims of nonresidents who purchased and used Plavix in other states "in no sense arise from [the defendant's] marketing and sales of Plavix in California." *Id.* at 1779. It was sufficient that "[b]oth the resident and nonresident plaintiffs' claims are based on the same allegedly defective product and the assertedly misleading marketing and promotion of that product." *Id.*

The U.S. Supreme Court reversed. "The mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims," the Court explained. *Id.* at 1781. A state may not authorize specific jurisdiction based solely on "a defendant's relationship with a . . . third party," even when that third party has "similar" claims against the defendant that fall within the court's specific jurisdiction. *Id.* at 1782. Although the Court maintained that the "primary concern" of the personal jurisdiction inquiry "is 'the burden on the defendant,'" it defined the relevant burden so as to include not only "practical problems resulting from litigating in the forum," but also "the more abstract matter of submitting to the coercive power of a State that may have little legitimate interest in the claims in question." *Id.* at 1780. "[R]estrictions on personal jurisdiction," the Court said, "are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations on the power of the respective states." *Id.* (quotation marks omitted).

Plaintiffs do not address *Bristol-Myers* in their response. Nor do they argue that the non-Illinois Plaintiffs' claims arise from or relate to Defendants' contacts with Illinois. Instead, Plaintiffs argue that the court has "pendent personal jurisdiction" to hear the claims of the non-Illinois Plaintiffs, because those claims share "a common nucleus of operative facts"—involving

---

[3]      The defendant sold $900 million worth of Plavix in California between 2006 and 2012, amounting to approximately one percent of the company's nationwide sales revenue. *Bristol-Myers*, 137 S. Ct. at 1778.

6

Defendants' alleged "joint, deceptive advertising of St. John's Wort Standardized Extract products"—with the claims of the Illinois Plaintiffs. (Pls.' Resp. Br. 3.) Where the claims of multiple parties share such a factual "nucleus," Plaintiffs argue, the doctrine of pendent personal jurisdiction allows a court with specific jurisdiction over some of the parties' claims to hear the remaining claims for which the court would otherwise lack personal jurisdiction.

It is true, as Plaintiffs point out, that the Seventh Circuit has in the past recognized that where a court has specific jurisdiction over a defendant for one claim, it may exercise personal jurisdiction over that same defendant for other claims involving "the same nucleus of operative fact." *Robinson v. Engineering Co. Pension Plan & Trust v. George*, 223 F.3d 445, 450 (7th Cir. 2000) (specific jurisdiction over securities claim permitted federal court to assert "supplemental personal jurisdiction" over state-law fraud claim arising from same facts). It is also true that asserting jurisdiction over the non-Illinois Plaintiffs' claims would not impose a significant logistical burden on Nature's Bounty or Puritan's Pride, as those two defendants will already be litigating the Illinois Plaintiffs' claims in this district. Moreover, *Bristol-Myers* does not directly preclude the application of pendent personal jurisdiction doctrine in this case, because the Supreme Court expressly limited the holding in *Bristol-Myers* to the exercise of personal jurisdiction by state courts. *See* 137 S. Ct. at 1783-84. Arguably, the interstate federalism concerns underlying that decision play out differently in federal court, where it is the coercive power of the United States, rather than the coercive power of another state, to which a defendant is asked to submit. *See Sloan v. General Motors LLC*, 287 F. Supp. 3d 840, 858-59 (N.D. Cal. 2018). So long as a defendant has sufficient contacts with the United States, the Constitution might not prohibit the exercise by a federal court of pendent personal jurisdiction over one party's claim that arises from the same "nucleus of operative fact" as another party's claim over which the court has specific jurisdiction. *Cf. J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 884 (2011) ("Because the United States is a distinct sovereign, a defendant may in principle be subject to the jurisdiction of the courts of the United States but not of any particular state. This is consistent with the premises

7

and unique genius of our Constitution."); *Lakeside Bridge & Steel Co. v. Mountain State Const. Co., Inc.*, 597 F.2d 596, 598 (7th Cir. 1979) ("[C]ongress could, if it chose, extend the jurisdiction of federal courts in any kind of case subject to the federal judicial power to persons found anywhere within the United States.").

But there is an additional wrinkle in this case. The Federal Rules of Civil Procedure require federal courts sitting in diversity to apply the personal-jurisdiction law of the states in which they sit. *See Tamburo*, 601 F.3d at 700. As a result, *Bristol-Myers* imposes an *indirect* bar on federal courts' exercise of pendent personal jurisdiction in diversity cases like this one. Because state courts cannot exercise personal jurisdiction on the basis of a non-resident defendant's relationship with a third party, and the scope of a federal court's personal jurisdiction in diversity cases is determined by state law, a federal court sitting in diversity cannot exercise personal jurisdiction—"pendent" or otherwise—on that basis either. *Cf. Practice Mgmt. Support Svcs. v. Cirque de Soleil, Inc.*, No. 14 C 2032, 2018 WL 1255021, at *16 (N.D. Ill. March 12, 2018) (Durkin, J.) (*Bristol-Myers* applicable because no federal statute authorized nationwide service of process and state law therefore determined scope of court's personal jurisdiction).

Plaintiffs do not cite any cases that challenge this conclusion. In *Robinson v. Engineering Co. Pension Plan & Trust*, the underlying claim on which the federal court's jurisdiction to hear pendent state claims rested arose from a federal statute that authorized extraterritorial service of process. *See* 223 F.3d at 449-50. So too in *Central States Southeast and Southwest Areas Pension Fund v. LaCasse*, 254 F. Supp. 2d 1069, 1072 (N.D. Ill. 2003). The underlying claim in *Sloan v. General Motors LLC* also raised a federal question, though the court did not specify whether that statute authorized extraterritorial service of process. *See* 287 F. Supp. 3d at 859 n.2. Plaintiffs' remaining cases were decided long before *Bristol-Myers*, and none considered whether exercising personal jurisdiction might conflict with principles of interstate federalism. *See Rice v. Nova Biomedical Corp.*, 763 F. Supp. 961, 966 (N.D. Ill. 1991); *Jackson v. N'Genuity Enterprises Co.*, No. 09 C 6010, 2010 WL 3025015, at *6 (N.D. Ill. August 2, 2010). More recent

8

decisions from courts in this district recognize that *Bristol-Myers* has changed the applicable law since these cases were decided. *See, e.g.*, *Greene v. Mizuho Bank, Ltd.*, 289 F. Supp. 3d 870, 875 (N.D. Ill. 2017) (Feinerman, J.) (granting motion for reconsideration because *Bristol-Myers* "squarely rejected" the notion "that a court has personal jurisdiction over a plaintiff's claims that lack a sufficient nexus to the forum state just because those claims are closely related to another plaintiff's claims that do have that nexus.").

Because the non-Illinois Plaintiffs' claims do not arise from or relate to Defendants' contacts with Illinois, and because *Bristol-Myers* bars Illinois courts from exercising pendent personal jurisdiction based on the alleged existence of a common nucleus of operative fact between those claims and the claims of the Illinois Plaintiffs, Defendants' motion to dismiss the claims of Regina Corbin, Colleen Gaines, and Donna Bengen is granted.[4]

## II. Joinder

Defendants next ask the court to "drop" Plaintiff Melissa Bowers and Defendant Puritan's Pride because they are misjoined to Muir's suit against Nature's Bounty. Rule 20 governs the permissive joinder of parties in federal court. Under this rule, two or more parties "may be joined in one action," either as plaintiffs or as defendants, if (1) they assert (or have asserted against them) "any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences"; and (2) "any question of law or fact common to all [plaintiffs and/or defendants] will arise in the action." FED. R. CIV. P. 20(a)-(b).

According to Defendants, joinder is improper here because Muir's and Bowers' claims "rely on different purchases of different products at different times from different companies." (Defs.' Mot. to Dismiss 8-9.) They analogize this case to *Walgreen Co. v. Networks—USA V*, where another court in this district found that a single plaintiff (Walgreen's) could not join its claims

---

4    Because the court concludes that it lacks personal jurisdiction over these Plaintiffs' claims, it need not consider Defendants' argument that venue for these claims is also improper.

against three related corporate defendants, each of which allegedly breached one of three separate lease agreements with Walgreen's by failing to maintain and make repairs on one of three separate properties. *See* No. 12 C 1317, 2012 WL 6591810 (N.D. Ill. Dec. 17, 2012) (St. Eve, J.). Walgreen's argued that its claims against each defendant arose from the same "series of transactions or occurrences" for purposes of Rule 20, because each of the three defendants shared a corporate principal or parent and each violated "the exact same terms" of the applicable lease. *Id.* at *6-7. But the court disagreed. It found joinder of the defendants to be improper because each of Walgreen's claims involved "separate transactions of three separate properties entered into on different dates," and because Walgreen's "grievances" against each defendant "involve[d] different issues with the separate properties." *Id.* at *6. The fact that each defendant's conduct was similar "does not necessarily suggest that their conduct [was] related," the court explained. *Id.* at *7. "If similar conduct fulfilled Rule 20's standard, Walgreens [sic] could join every lessor who ever allegedly failed to maintain leased property in one federal lawsuit." *Id.*

Defendants also cite *Androphy v. Smith & Nephew* to support their position. *See* 31 F. Supp. 2d 620 (N.D. Ill. 1998) (Bucklo, J.). In that case, the plaintiff sued four companies for patent infringement, alleging that all four had infringed the same patents. Although the court agreed with plaintiff that a common question of law or fact existed for purposes of Rule 20, it nevertheless granted the defendants' motion to sever because there was no common transaction or occurrence that tied the defendants to one another. The four corporate defendants, the court explained, were "separate companies that independently design, manufacture and sell different products in competition with each other." *Id.* at 623.

The facts in *Walgreen Co.* and *Androphy* bear some resemblance to the facts in this dispute, but neither case is truly analogous. In *Androphy*, the defendants were separate companies in competition with one another, and the court made no mention of any allegations of collaboration among them. Here, on the other hand, Plaintiffs not only allege that Nature's Bounty and Puritan's Pride share a corporate parent—as it appears the defendants in *Walgreen Co.* did

10

as well—but also that the two companies "are simply brands of the same company," and that they "jointly and uniformly misrepresented the amount of standardized extract on the Products' labels." (Pls.' Resp. Br. 7, 9.) This allegation of a *joint* effort to misrepresent the content of the two companies' products links the companies together for purposes of the permissive joinder rule. It makes what would otherwise be "similar" but not "related" transactions or occurrences, like those at issue in *Walgreen Co.*, part of a single "series of transactions or occurrences," as required by Rule 20. Because the claims also raise common questions of both law and fact—including, but not limited to, whether the Defendants knowingly made misrepresentations about their St. John's Wort products—the requirements for permissive joinder are satisfied, and Defendants' motion to "drop" Bowers and Puritan's Pride is denied.

### III.     Standing and class certification

In its previous opinion in this case, the court granted Defendants' motion to strike Muir's consumer fraud claim on behalf of a proposed multi-state class, concluding (1) that Illinois choice-of-law rules require that the law of the state where each Plaintiff or class member's injury occurred govern his or her claims; (2) that Muir lacks "statutory standing" to assert claims under the consumer fraud laws of states other than Illinois, and (3) that "the question of standing must be addressed before certification where the standing of the named plaintiff to assert the claims of the class is in question." *Muir*, 2017 WL 4310650, at *7-9. Defendants now argue that the same logic supports striking the multi-state class claim from the Second Amended Class Complaint. In the alternative, Defendants argue that the multi-state class claim should be stricken because differences in the relevant state consumer fraud laws preclude class certification under Rule 23. For the reasons explained below, the court has reconsidered its reasoning in steps (2) and (3) above, and it declines to strike Plaintiffs' multi-state class claim at this stage of the litigation, before Plaintiffs have had the opportunity to conduct class discovery.

### a.     Standing

There is no question that Plaintiffs Muir and Bowers have "standing" in the constitutional

sense.  They allege that Defendants injured them by deceptively labeling the products Muir and

Bowers purchased, and they ask the court to redress their injuries by ordering Defendants to pay

money.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (outlining the "irreducible

constitutional minimum of standing").  Although Muir and Bowers seek redress under multiple

legal theories, they satisfy the injury-in-fact, causation, and redressability requirements of Article

III for each of these claims.  *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("[A]

plaintiff must demonstrate standing for each claim he seeks to press.").  As a result, Muir and

Bowers have *constitutional* standing to assert all the claims in the Second Amended Class

Complaint—even those that are premised on the laws of states where their injuries did not occur.

*See Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011) (plaintiffs injured outside of

Illinois had Article III standing to assert claims under Illinois Consumer Fraud Act).

The court recognizes that though they have Article III standing to assert claims under the

consumer fraud laws of states other than Illinois, Muir and Bowers likely could not *prevail* on their

own claims under those laws.  Muir and Bowers are residents of Illinois, and neither alleges that

the injuries they suffered are connected in any way to California, Michigan, or Pennsylvania.  Each

of those states' potentially applicable consumer fraud statutes require at least some connection

between the asserted injury and the state.[5]  Muir and Bowers assert these claims on behalf of

proposed class members who *were* injured outside of Illinois, but there appears to be no plaintiff

---

[5]     California's unfair competition and false advertising statutes both require the
alleged misconduct or injury to have occurred in California.  *Ehret v. Uber Techs., Inc.*, 68 F.
Supp.3d 1121, 1129-30 (N.D. Cal. 2014); *Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134,
1147-48 (N.D. Cal. 2013); CAL. BUS. & PROF. CODE §§ 17200, 17500.  Pennsylvania's Uniform
Trade Practices and Consumer Protection Law and Michigan's Consumer Protection Act can
apply to misconduct or injuries that occurred elsewhere, provided the entity alleged to have
committed that misconduct was headquartered within the state.  *See Danganan v. Guardian Prot.
Servs.*, 179 A.3d 9, 15-17 (Pa. 2018); *Nesbitt v. American Community Mut. Ins. Co.*, 600 N.W.2d
427, 433 (Mich. Ct. App. 1999); 73 PA. STAT. §§ 201-1-201-9.3; MICH. COMP. LAWS §§ 445.901-
445.922.

at this stage of the litigation—prior to class certification—with a valid claim under those statutes. This raises a problem that is sometimes referred to as a lack of "statutory standing." *See, e.g.*, *Kohen v. Pacific Investment Management Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009).

Courts disagree about whether, prior to class certification, there must be at least one named plaintiff with "statutory standing" to recover under a particular legal theory in a class-action complaint. *See Baldwin v. Star Scientific, Inc.*, 78 F. Supp. 3d 724, 731-35 (N.D. Ill. 2015) (collecting cases). The term itself is confusing, as it suggests a jurisdictional prerequisite akin to Article III standing. Some courts in this district have treated it as such, concluding that a named plaintiff's lack of statutory standing under a particular legal theory strips the court of the power to decide if he can represent a class seeking relief under that theory. *See, e.g.*, *In re Dairy Farmers of America, Inc. Cheese Antitrust Litigation*, MDL No. 2031, 2013 WL 4506000, at *6-8 (N.D. Ill. Aug. 23, 2013) (Dow, J.). But the weight of recent authority points in the opposite direction. The Seventh Circuit has held that "the question of who is authorized to bring an action under a statute is one of statutory interpretation; it does not implicate Article III or jurisdiction." *Woodman's Food Market, Inc. v. Clorox Co.*, 833 F.3d 743, 750 (7th Cir. 2016). *See also Morrison*, 649 F.3d at 536 ("That a plaintiff's claim under his preferred legal theory fails has nothing to do with subject matter jurisdiction unless the claim is so feeble as to be 'essentially fictitious.'") (citation omitted). Because statutory standing is not jurisdictional, there is no *constitutional* imperative that the named plaintiff himself have a valid claim under every legal theory he proposes to assert on behalf of a class. *See Morrison*, 649 F.3d at 535-38. If such a requirement exists, it is the consequence of the class-certification prerequisites imposed by Rule 23 of the Federal Rules of Civil Procedure, not of Article III. *See id.*; *Langan v. Johnson & Johnson Consumer Companies, Inc.*, --- F.3d ---, 2018 WL 3542624, at *3 (2d Cir. July 24, 2018) ("[A]s long as the named plaintiffs have [constitutional] standing to sue the named defendants, any concern about whether it is proper for a class to include out-of-state, nonparty class members with claims subject to different state laws is a question of predominance under Rule 23(b)(3), not a question of 'adjudicatory competence'

under Article III."); *Halperin v. Int'l Web Services, LLC*, 123 F. Supp. 3d 999, 1009 (N.D. Ill. 2015) (Feinerman, J.) (recharacterizing a defendant's challenge to the named plaintiff's statutory standing as a challenge to the propriety of class certification).

On further reflection, this court withdraws its earlier determination that the multi-class claim asserted in Muir's First Amended Complaint must be stricken. The rationale for that determination—Muir's lack of statutory standing to assert claims under the consumer fraud laws of Pennsylvania, Michigan, and California—is not sufficient to support the conclusion that he cannot proceed on claims brought under the laws of other states. *See Langan*, 2018 WL 3542624, at *8 (remanding case to district court for "the requisite considered analysis of the variations in state law"). In light of the growing weight of authority that treats "disjunctures" between a class representatives' claims and those of absent class members as a problem to be analyzed under the rubric of Rule 23, rather than the doctrine of statutory standing, *see* NEWBERG ON CLASS ACTIONS § 2:6 (5th ed. June 2018), the court will do the same here.

**b.      Rule 23**

The court therefore turns to Defendants' alternative argument for striking Muir's and Bowers' claim on behalf of the proposed multi-state class: that variations in the consumer fraud laws of Illinois, California, Michigan, and Pennsylvania preclude class certification under Rule 23. Although Plaintiffs have not yet filed a motion for class certification, the court need not wait until they do so to strike their class allegations "if it thinks that additional discovery would not be useful in resolving the class determination." *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011). *See also* 1 MCLAUGHLIN ON CLASS ACTIONS § 3:4 (14th ed. 2017) ("[M]otions to strike should not be the norm, but are appropriate when the unsuitability of class treatment is evident on the face of the complaint and incontrovertible facts.").

Defendants argue that no discovery is necessary here because differences in the relevant state consumer fraud laws foreclose any possibility that Plaintiffs can satisfy the "commonality" requirement in Rule 23(a)(2) or the "predominance" requirement in Rule 23(b)(3). The court is

less certain. It is true, as Defendants point out, that the Seventh Circuit has stated that "[n]o class action is proper unless all litigants are governed by the same legal rules." *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1016 (7th Cir. 2002). But more recent authority confirms that some degree of variation is permissible. In *Suchanek v. Sturm Foods*, for example, the Seventh Circuit reversed a district court's decision to deny certification of a class of persons in eight states—including Illinois and California—who purchased deceptively labeled coffee. 764 F.3d 750 (7th Cir. 2014). All eight states' consumer protection laws included at least one common requirement: that the defendant's statement about its product be either literally false or likely to mislead a reasonable consumer. *Id.* at 756. The court found this overlap among the elements of the applicable state laws to be sufficient. Where "the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members," the court explained, and where all of those claims "will rise or fall" on the resolution of at least one common question, the requirements of Rule 23(a)(2) are satisfied. *Id.* at 757. "Neither Rule 23 nor any gloss that decided cases have added to it requires that *every* question be common." *Id.* at 756. *See also Langan*, 2018 WL 3542624, at *6 ("Variations in state laws do not necessarily prevent a class from satisfying the predominance requirement.").

Defendants urge that the consumer fraud laws of Illinois, California, Michigan, and Pennsylvania include different statutes of limitations, different rules regarding the availability of punitive damages, and different requirements with regard to a defendant's intent (or lack thereof) to induce reliance, among other things. Assuming Defendants' analysis on these matters is correct, that argument ignores the core, overlapping elements in the four states' consumer protection laws. All four states' laws prohibit, in one phrasing or another, unfair, fraudulent, or deceptive practices in the course of trade or commerce. *See* 815 ILCS 505/2 ("[u]nfair methods of competition and unfair or deceptive acts or practices . . . in the conduct of trade or commerce"); CAL. BUS. & PROF. CODE § 17200 ("unlawful, unfair, or fraudulent business act[s] or practice[s] and unfair, deceptive, or misleading advertising"); MICH. COMP. LAWS § 445.903 ("[u]nfair,

15

unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce");

73 PA. STAT. § 201-3 ("[u]nfair methods of competition and unfair or deceptive acts or practices

in the conduct of any trade or commerce"). All of the proposed class members' claims will thus

rise or fall on the question of whether the labeling on the products Plaintiffs' purchased was, in

fact, false or misleading. That is a common question capable of generating a common answer

that "will resolve an issue that is central to the validity of each one of the claims in one stroke."

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). *See also Mullins v. Direct Digital, LLC*,

No. 13 C 1829, 2014 WL 5461903, at *2 (N.D. Ill. Sept. 30, 2014) (common questions of "whether

the ingredients of [the defendant's product] provide any health benefits to a person's joints and

whether [the product's] labeling deceives the public consumer" were sufficient to satisfy

commonality requirement in class action brought under the consumer protection laws of Illinois

and nine other states), *aff'd*, 795 F.3d 654 (7th Cir. 2015).

　　　Whether the common issues in this case will "predominate" over other issues raised by

the variations in state law is a more complicated question. The predominance requirement in

Rule 23(b)(3) is "far more demanding" than the commonality requirement in Rule 23(a)(2).

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 624 (1997). To determine whether common

issues predominate over individual ones, the court must consider "whether the common,

aggregation-enabling, issues in the case are more prevalent or important than the non-common,

aggregation defeating individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036,

1045 (2016) (citation and quotation marks omitted). Given the rigorous standard for

predominance, this court is inclined to postpone its decision on the issue until after Plaintiffs have

had an opportunity to take discovery. With a clearer factual record before it, the court will be

better able to assess whether variations in state law will or will not undermine the efficiency-

enhancing purpose of aggregate litigation here. *See* NEWBERG ON CLASS ACTIONS § 4:49 ("[T]he

predominance test is meant to help courts identify cases in which aggregate treatment would be

efficient[.]").

The court declines to strike the class allegations at this time.  This ruling is not tantamount to an order certifying the multi-state class proposed by Plaintiff.  Instead, the court simply concludes that Defendants have not shown that differences in the applicable state consumer protection laws foreclose any possibility of certifying that class.

## CONCLUSION

Defendants' motion to dismiss and strike [61] is granted in part and denied in part.  The claims of Plaintiffs Regina Corbin, Colleen Gaines, and Donna Bengen are dismissed for lack of personal jurisdiction.  The court declines to sever the claims of Plaintiffs Muir and Bowers or to strike Plaintiffs' multi-state class allegations.

ENTER:

Dated: August 1, 2018

_____

REBECCA R. PALLMEYER
United States District Judge